## Sword, et al. v. Ratliff, et al.

(Decided September 19, 1918.)

### Appeal from Pike Circuit Court.

Appeal and Error.—In this equity suit no substantial error prejudicial to the appellant appears and the judgment is affirmed.

J. M. ROBERSON, ROBERSON & COOPER and HAZELRIGG & HAZELRIGG for appellants.

CLINE & STEELE and J. P. HOBSON & SON for appellees J. S. Cline and Jos. S. Reed Company.

STRATTON & STEPHENSON for appellees, R. H. Ratcliff, Hampton Grocery Company and J. E. Yost.

J. R. JOHNSON for appellee, J. W. Ford.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In March, 1914, Sword executed a note to the Hampton Grocery Company for $341.00, and to secure its payment gave a mortgage on a tract of land on Island Creek, "containing 200 acres, being same land conveyed to J. G. Sword by J. M. Sword, Deed Book 65, page 127." The grocery company brought a suit on this note and to enforce its mortgage lien, and in February, 1915, there was a judgment giving to the grocery company the relief prayed for, and ordering a sale of the land, subject to a prior lien of one Ratliff.

On August 17, 1915, Ford brought suit on a note for $700.00, dated Feb. 15, 1915, and to enforce a mortgage lien to secure its payment on a tract of land on Island Creek "conveyed to John G. Sword by John M. Sword by deed recorded in Deed Book 65, page 127."

In March, 1915, the John G. Reed Company brought a suit against John G. Sword to recover judgment on an account for $708.00 and secured an attachment. In May, 1915, there was a judgment for the claim of the Reed Company, and the attachment which had been levied upon land conveyed by John M. Sword to J. G. Sword by deed recorded in Deed book 65, page 127, was sustained.

In January, 1916, Ratliff brought a suit against Sword to recover judgment upon a note for $1,250.00, dated March 13, 1914, credited by $400.00 paid August

10, 1914, and to enforce a mortgage lien to secure the payment of the note on a tract of land on Island Creek "deeded to J. M. Sword by J. R. Huffman and deeded to J. G. Sword by J. M. Sword by deed recorded in Deed Book 65, page 127."

In March, 1916, the several suits were consolidated, and judgment went by default for the amount of the debts sued on by these parties and they were adjudged a lien on the land heretofore described. The land was appraised at $3,000.00 and in May, 1916, it was sold to J. S. Cline for $2,301.00; exceptions to this sale were filed by Sword in May, 1916, because more land was sold than was embraced in the mortgage; the land was under-appraised; the homestead of the wife of Sword was sold when it should not have been; judgment in favor of Ratliff was too much by $500.00.

The exceptions to the report of sale were sustained and the sale set aside at the cost of Sword. Thereafter the land was again appraised at $2,500.00, and in August, 1916, was sold to Cline again for $2,500.00.

Sword and his wife filed exceptions to this sale upon the ground that the land was appraised too low; because the commissioner sold land not described in the judgment; because the homestead of the wife of John G. Sword was sold when it should not have been; because a debt due by Brewer was paid to Cline, the purchaser.

Thereafter, these exceptions were overruled and the sale confirmed.

This appeal is prosecuted by John G. Sword and his wife from a part of the order sustaining the exceptions to the first report of sale, and from the order overruling exceptions to the second sale.

It is contended by counsel for the appellants that the court should not have ordered a re-sale of the land when the exceptions to the first sale were sustained, because there was then pending a suit of appellant, Sword, against Ratliff; but we do not think this suit should have any controlling influence on our decision, because it sets up no sufficient reasons why the relief therein sought was not presented by an answer to the suit of Ratliff. The Swords were made defendants in all these suits, and served with process, but they let judgment go by default without making any defense, and this being so they could not, in an independent suit, set up defenses that might have been made in the original suits, in the

absence of sufficient reasons showing why the defenses that could have been made were not asserted.

It is further said that in the mortgage made by Sword to Ratliff only one tract of land was conveyed to Ratliff and that two tracts of land were ordered to be sold in the judgment rendered in the consolidated suits. The mortgage to Ratliff conveyed one tract of land "lying and being in Pike county, Kentucky, and on Island creek, this being the same land that was deeded to J. M. Sword by J. R. Huffman and wife October 30, 1911, by deed recorded in Deed Book 64, page 176, and the same land that was deeded to me by J. M. Sword January 30, 1912, deed recorded in Deed Book 65, page 127." Now it is contended that this only mortgaged to Ratliff the land conveyed by Huffman to Sword, but we find that Sword mortgaged to Ratliff the land deeded to him by J. M. Sword, and John G. Sword testifies that he only got one deed from his father, and that deed, which was recorded in Deed Book 65, page 127, included more land than the tract that his father got from Huffman.

Our construction of this mortgage is that Sword intended to mortgage to Ratliff the land deeded to him by J. M. Sword.

One of the exceptions to the sale is that John G. Sword was absent in Catlettsburg on the day of the sale; but there is no merit in this exception because there is no sufficient reason shown why Sword could not have attended the sale if he desired. Another exception is that the land was appraised too low. At the first sale it was appraised at $3,000.00, and at the second sale at $2,500.00, and there is some evidence that the land was worth probably $5,000.00. A very satisfactory answer to the argument that the land sold for much less than its value is that the purchaser, at the sale, offered at different times to let Sword have the land if he would pay him the amount of his bid with interest and costs. This shows in a very conclusive way that the land was not worth $5,000.00, nor more than it was sold for, and furthermore, that Sword had the privilege of redeeming it at different times long after the sale by the payment of the amount for which it sold, with interest and costs, although the purchaser had paid for it more than two-thirds of its appraised value.

Another objection urged is that the homestead of Sword was ordered to be sold by the judgment in the con-

solidated cases, and was, in fact, sold, although the wife of Sword did not join in the mortgage to the Hampton Grocery Company. Admitting that Sword could raise the question of his right to a homestead by an exception it is very clear that he was not, under the facts appearing in the records, prejudiced by the order overruling it on account of the fact that the homestead was subject to the debts of Ratliff and Ford.

It appears that after these mortgages by Sword, he sold a part of the mortgaged land to Dick Brewer for $1,000.00; that Brewer paid him $641.00, and gave him his note for $359.00. This land sold to Brewer was, of course, subject to the payment of the mortgage debts, and was, in fact, sold in satisfaction of these debts, and Brewer was directed by the judgment to pay the balance due by him to the receiver of the court to be credited on Ratliff's debt. Afterwards this $359.00 was ordered to be paid to Cline, the purchaser of the land, and now Sword is complaining of this order directing the payment of the money to the purchaser, Cline. It appears that Brewer was not a party to the suits brought against Sword, and, therefore, not bound by the judgment in these suits, but in order to protect Brewer, the purchaser, Cline, who might have taken Brewer's land from him by virtue of his purchase, made an arrangement with Brewer by which it appears that Brewer was permitted to keep the land he bought and pay to Cline, the purchaser, the $359.00, balance due on the purchase price that the judgment directed should be applied on Ratliff's debt. We are unable to perceive how this modification of the order affected, in any prejudicial way, the rights of Sword. Sword collected from Brewer $641.00 of the purchase price of this land that, apparently, had previously been mortgaged for its full value, and if Brewer, by the payment of $359.00 to the purchaser at the judicial sale, was permitted to keep the land that the purchaser might have taken from him, we do not see how it was any concern of Sword's, as he got out of it $641.00 to which he was not really entitled.

A careful examination of the record satisfies us that there is no error prejudicial to the substantial rights of Sword and the judgment is affirmed.